IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PARMA COMMUNITY GENERAL HOSPITAL, | ) <br> ) CASE NO. 1:09 CV 325 <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) JUDGE DONALD C. NUGENT <br> ) |
| PREMIER ANESTHESIA OF PARMA, *et al.*, | ) <br> ) MEMORANDUM OPINION |
| Defendants. | ) AND ORDER |

This matter is before the Court on *Defendant's Motion for Partial Summary Judgment On the Enforceability And Meaning of Settlement Agreement, and Supporting Memorandum of Points and Authority* (ECF #76); *Defendant's Motion For Summary Judgment On Plaintiff's Unjust Enrichment and Fraud Claims, and Supporting Memorandum of Points and Authorities* (ECF # 75); and, *Plaintiff Parma Community General Hospital's Motion for Summary Judgment on Defendant's Counterclaim.* (ECF # 72). There has been a Response to each motion, and each party has filed a Reply in support of its own motion(s). (ECF # 92, 91, 93, 97, 96, 95). The issues have been fully briefed and are now ripe for consideration.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue"

rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## FACTUAL BACKGROUND[1]

The Complaint alleges that on April 5, 2005, Parma Community General Hospital ("Parma") and Premier Anesthesia of Parma ("Premier") entered into an agreement by which Premier would be the exclusive provider of anesthesia services at Parma for two years ("the Agreement"). The parties subsequently agreed to extend the term of the Agreement through the end of December in 2007. (ECF #11, ¶¶ 4, 5).

---

[1] The factual summary is based upon agreed or unchallenged facts set forth in the parties' statements of facts. Those material facts that are controverted and have support on both sides, as established by deposition testimony, affidavit, or other appropriate evidence are stated in a light most favorable to the non-moving party.

-3-

Article IV of the Agreement sets forth the parties' rights and obligations with respect to the final profits or losses that would result from a reconciliation of the practice-related expenses and revenues incurred by or collected by Premier. Specifically, section 4.5.2 sets forth the procedures for a final accounting at the termination of the Agreement.[2] The Agreement also gave Premier non-compete rights that prohibited its health care providers from working at Parma for two years after Parma's termination of the Agreement. On November 12, 2007, Parma informed Premier that it was terminating the Agreement, effective December 31, 2007. (ECF # 77, Ex. B). As of December 3, 2007, there remained outstanding invoices from August, September, and October, which Premier considered to be in default. In order to resolve the default and avoid any issues stemming from an early termination of the contract, Premier proposed a settlement that would resolve the default issues and address the non-compete restricting Parma's ability to hire the current anesthesia staff following the termination of the agreement.[3] The proposed settlement agreement contained the following terms:

1. Parma immediately pays [Premier's] invoices for August, September, and October;

2. [Premier's] invoices for November and December, 2007, will be part of a final settlement;

---

[2] This section applies if the contract is terminated after the first year. The contract was in effect for more than two years.

[3] These two issues, the handling of the November and December invoices, and the procedures for settlement at termination are the only issues specifically resolved or altered by the settlement agreement. As there was no general waiver or release included in the agreement, the right to pursue alleged breaches of the original contract not related to the August 2007 through December 2007 invoices, the non-compete, or the procedures for settlement at termination are not affected by this settlement.

-4-

>   3.  In February 2008, [Premier] will give Parma [Premier's] calculation of all collections received and costs incurred by [Premier] since contract inception (April 1, 2005) through and ending December 31, 2007. The $590,500 deposit will be treated as a [Premier] collection in this calculation. After Parma's review of [Premier's] calculation, we will settle with a payment to or from Parma per the calculation. This procedure will supercede the procedure in our contract.
>
>   4.  [Premier] will release the providers noted above from their contract restrictions from working for Parma.

On the very next day, Parma's General Counsel responded to the proposal stating: "Your December 3rd proposal is accepted," and indicating that a check for outstanding invoices would be sent by December 7, 2008. Pursuant to the agreement[4] Premier sent its calculation to Parma, concluding that Parma owed Premier approximately $360,141.[5] Parma spent several months reviewing the calculation and concluded that Premier owed Parma $339,326.96.

Premier's final calculation contained previously un-billed charges of approximately $290,000 for temporary staff costs, known by the parties as "locum tenens" expenses. Parma's expert concluded that these expenses appeared to be for bona-fide expenses actually incurred. The parties do not dispute that they were incurred in 2006, or that they were not billed or otherwise revealed to Parma until 2008. Because the parties could not reach an agreement on the final reconciliation, Parma filed its Complaint in the Cuyahoga County Court of Common Pleas.

---

[4] Parma argues that the calculation was not sent until May of 2009, three months after the agreed submission date from the December 3, 2008 letter

[5] This is reduction in the amount originally claimed by Premier. Premier's expert witness determined that this was the appropriate amount, and Premier modified its demand to correspond to the amount determined by its expert.

-5-

Premier timely removed the action to this Court. (ECF #1). The Complaint alleges three counts: (1) breach of contract, (2) unjust enrichment, and (3) fraud. Premier then filed a counterclaim for breach of contract, based on an alleged breach of the terms set forth in the December 3, 2008 letter.

## **ANALYSIS**

A. <u>Defendant's Motion for Summary Judgment on Plaintiff's Claims for Unjust Enrichment and Fraud</u>

Premier seeks to have this Court dismiss Plaintiff's Unjust Enrichment and Fraud claims as a matter of law, arguing that the claims in this case stem from a dispute over contractual terms, and therefore cannot give rise to claims for unjust enrichment or fraud. Under Ohio law claims for unjust enrichment are not allowed where an express contract governs the transactions at issue, and claims for fraud are not permitted when the damages resulting from the alleged fraud are not distinct from the damages available under a breach of contract claim. *See generally Ullman v. May*, 72 N.E.2d 63, 63, 147 Ohio St. 468, 468 (1947); *Corporex Dev. & Constr. Mgt., Inc. V. Schook, Inc*., 835 N.E.2d 701, 704, 106 Ohio St.3d 412, 414 (Ohio 2005).

The Amended Complaint bases the unjust enrichment claim on allegations that Premier charged unreasonable fees for locum tenens expenses, and engaged in self-dealing by retaining profits from the excess fees for itself or its affiliates. However, the Agreement specifically includes terms that require fees be reasonable and competitive. Therefore, the reasonableness of the fees is an issue that can be raised under the terms of the contract, and unjust enrichment is not an appropriate cause of action to address this allegation. As to the charge of self-dealing, this

allegation, even if true, does not give rise to a claim absent a relationship that would create a duty against it. There are no allegations that the parties had a fiduciary relationship, or any other relationship involving a heightened level of trust. Their relationship was defined solely by the terms of the contract. Therefore, if any duty against self-dealing were imposed, it would be created by the contract, and would properly be addressed through a breach of contract claim, and not by way of an unjust enrichment claim.

In so far as Parma's unjust enrichment claim may be based on specific representations made during the negotiation of the Agreement, and included in the Agreement, those claims parallel the breach of contract claim, and cannot be the basis for a claim of unjust enrichment. "Ohio law does not recognize an equitable claim for unjust enrichment, as a matter of law, when an express contract covers the same subject matter." *Davidson v. Davidson*, No. 17-05-12, 2005 WL 3274853, *5 (Ohio Ct. App. Dec. 5, 2005)(citing *Ullman v. May*, 72 N.E.2d 63, 63, 147 Ohio St. 468, 468 (1947). Consequently, any unjust enrichment claim for the use of locum tenens providers after the first year, allegedly in violation of representations made in negotiations and in Section 4.4.2 of the Agreement are dismissed as a matter of law. Any breach of contract claims based on an alleged violation of this section, however, remain viable causes of action.

Further, Parma's claim that Premier concealed more than $290,000 in order to induce Parma into continuing its contract with Premier and to enter into a settlement agreement with regard to other disputes, does not satisfy the elements of an unjust enrichment claim. There is no allegation that expenses were paid for services not rendered. Therefore, the allegations do not support an unjust enrichment claim. Further, as there is no dispute that services were rendered, the only challenge to the legitimacy of the charges that could arise would have to come from the

-7-

contractual terms addressing when locum tenens staff were allowed to be used, or what procedures had been agreed to with regard to how the charges would be calculated, when they would be disclosed or reported, and how they were to be allocated between the parties. Therefore, Defendant's Motion for Summary Judgment on the Plaintiff's unjust enrichment claims is granted.

With regard to the fraud claim, Parma contends in the Amended Complaint that Premier committed fraud by promising to obtain required staffing when it had no intention of doing so, and by engaging in self-dealing by upcharging provided services and pocketing the profit. Parma's fraud claims all stem from Premier's alleged failure to satisfy the terms of the contract,[6] and the damages stemming from the fraud allegations would mirror those damages sought under Parma's breach of contract claims.  Further, with regard to the allegations of self-dealing, as set forth above, Parma has provided no basis for a duty that would prohibit such activity, outside of the duty allegedly created by the contract itself, and has admitted as much in its Opposition. (ECF # 91, pg. 5).  Therefore, the "economic loss" doctrine bars Parma from pursuing damages through a cause of action for fraud.  *See, e.g., Ketcham v. Miller*, 104 Ohio St. 372, 136 N.E. 145 (1922); *Wolfe v. Continental Casualty*, 647 F.2d 705, 710 (6th Cir. 1981)(Ohio law forbids parties from converting contract actions into tort actions by attacking the intentions or motives of the breaching party); *Texlon Corp. v. Smart Media of Delaware, Inc.*, Nos. 22098 & 22099, 2005 WL 2292800 (Ohio Ct. App. Sept. 21, 2005); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 115 Ohio App.3d 137 (Ohio Ct. App. 1996).

---

[6] In fact, in its Opposition to the Motion for Summary Judgment, Parma clarifies that its allegation as to when and where the fraud took place was "under the contract". (ECF #91, pg. 6).

-8-

Aside from the allegations in the Complaint, Parma provides a new basis for its fraud claim in its Opposition to Defendant's Motion for Summary Judgment. In its Opposition, Parma raises the allegation that Premier fraudulently induced Parma into agreeing to the December settlement by failing to disclose un-billed locum tenens expenses. The remedy for the alleged fraud inducing Parma into agreeing to the December settlement would be rescission. Parma has asserted rescission as a defense to Premier's counterclaim for breach of the settlement agreement, and the validity of this defense is addressed in detail below. To the extent Parma is allowed to pursue its defense of rescission, it is also allowed to maintain an affirmative claim for fraudulent inducement of the December settlement.

To the extent that Parma may seek to assert a general claim for fraudulent misrepresentation based on the non-disclosure of the locum tenens expenses, however, that claim would be barred under the Ohio law. The contract appears to addresses when expenses must be disclosed. (ECF #91, Ex. A, Section 4.5.1.2.1. "Quarterly Reconciliation"). Therefore, any damages relating to the late disclosure of these charges would mirror the damages available for allegedly failing to report the expenses as required under the contract. This claim, therefore, would also be barred under the economic loss doctrine. If the contract does not determine when charges must be submitted, Parma has pointed to no basis giving rise to a duty of disclosure relating to those charges. Premier's request for Summary Judgment on Parma's fraud claims is, therefore, granted in part and denied in part.

B.  <u>Defendant's Motion for Summary Judgment on the Enforceability and Meaning of the Settlement Agreement</u>

-9-

There is no dispute that Parma, through its General Counsel, accepted the settlement terms in the December 3, 2007 letter, or that Parma has benefitted to some degree from the agreement.[7] However, the parties dispute the meaning of the terms included in that agreement. Premier argues that the December 3, 2007 letter setting forth proposed terms for a settlement between the parties is clear and unambiguous. The proposal requires Premier provide a calculation of monies allegedly owed based on "all collections received and costs incurred by [Premier] since contract inception (April 1, 2005) through and ending December 31, 2007." Premier contends that this language, on its face, clearly establishes that the calculation is to exclude any collections received after December 31, 2007, and is to include all costs incurred by Premier since April 1, 2005.

Parma contends that this language could be interpreted to include collections anticipated, or payable based on services performed through December 31, 2007, but not actually received by that date; and, that it should only include costs incurred by Premier over the last twelve months. Parma bases its arguments, in part, on the language and original formulas for calculation set forth in the original agreement.

The Court agrees with Premier that this language is unambiguous. The agreed basis for the calculation includes "collections received" between April 1, 2005 and December 31, 2007. There is nothing in the agreement that would suggest that "**collections received**" would include collections billed, incurred, or anticipated but NOT received. "[A] court may not delete or add words to a contract when determining the parties' rights and obligations under it." *Merz v.*

---

[7] Specifically by the elimination of any non-compete restrictions placed on the anesthesia staff, and by avoiding the possibility of an early termination of the contract based on their alleged default

-10-

*Motorists Mut. Ins. Co.*, No. CA2006-08-203, 2007 WL 1394560, *6 (Ohio App. May 14, 2007); *see also Kellie Auto Sales, Inc. v. Rahbars & Ritters, Ents*., L.L.C., 172 Ohio App. 3d 675, 876 N.E.. 2d 1014, 1024 (Ohio App. 2007).[8]  Similarly, there is absolutely nothing in the terms of this agreement to suggest that the parties did not mean to include "costs incurred" prior to December 31, 2007.  The language specifically includes "costs incurred" between April 5, 2005 and December 31, 2007.  Further, the agreement specifically states that the terms of the calculation are to supercede the procedures set forth in the original agreement.[9]  Therefore, the Court cannot look to the language contained in procedures from the original agreement to determine the meaning of a settlement proposal that specifically superceded those terms.

It may very well be that Parma did not intend to agree to the terms as written.  However, that is irrelevant to the enforcement of those terms.  The language used is clear and unambiguous, and Parma is bound to abide by the plain language of the terms it agreed to.  Although the overriding concern when interpreting a contract is to ascertain and effectuate the intention of the parties, that intent "is presumed to reside in the language they chose to employ in the

---

[8] Parma's argument that the word "collections" is ambiguous and could include collections anticipated but not received, even if taken as true, does not resolve the question.  If the agreement had said that "collections from before December 31, 2007" were to be included in the final calculation, this argument may have held some weight.  But, the clear language of the agreement states that only collections "received" by the December date are to be included. The word "received" modifies "collections" and is not ambiguous.  Therefore, even if we accepted that "collections" could included "collections anticipated," the agreement would still clearly include only those anticipated collections that were actually received by December 31, 2007.

[9] A fair reading of the original contract reveals that the procedures that were superceded are those procedures relating to settlement at termination.  These procedures are set forth at paragraph 4.5.2 of the original agreement.

agreement." *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 413, 31 Ohio St. 3d 130, 132 (Ohio 1987).  Therefore, "evidence cannot be introduced to show an agreement between the parties is materially different from that expressed by clear and unambiguous language of the instrument." *Blosser v. Enderlin*, 148 N.E. 393, 396, 113 Ohio St. 121, 134 (Ohio 1925)).  Therefore, this Court finds, as a matter of law, that the language included in the terms of the settlement agreement from December of 2007, provides that the settlement at termination shall include collections actually received between April 5, 2005 and December 31, 2007, and includes "costs incurred" by Premier between April 5, 2005 and December 31, 2007.

However, although the terms of the agreement are unambiguous, this does not necessarily mean that the agreement is enforceable as a matter of law.  Parma argues that even if the Court agrees with Premier with regard to the meaning of the December agreement, that agreement is rescindable based on Premier's alleged fraud or Parma's unilateral mistake relating to un-billed costs that were not disclosed to Parma prior to entering into the December agreement. Rescission is available to undo a contract if the contract was entered into on the basis of fraud, duress, undue influence, or mistake.  *See generally Wannemacher v. Cavalier*, 2004 Ohio 4020, 2004 WL 1718080, *9 (Ohio App. 3 Dist., 2004).   "The primary purpose of rescission is to return the parties to their original positions before the contract was formed." *Trajcevski v. Bell*, 115 Ohio App. 3d 289, 292, 685 N.E.2d 289, 291 (1996).

Parma alleges that Premier knew there were outstanding undisclosed charges when it made the settlement offer, and knew that Parma was unaware that these charges were outstanding when it agreed to the offer.  (ECF #92).  Premier argues that even if this were true, Parma has received a tremendous benefit under the agreement, and did not take timely steps to initiate

rescission after learning of the allegedly concealed charges in May of 2008.  Under Ohio law, a party cannot rescind a contract unless it is willing and able to return the consideration or benefit it obtained from the agreement. *See, e.g., Id., Mid-America Acceptance Co. v. Lightle*, 63 Ohio App. 3d 590, 599, 579 N.E.2d 721, 727 (1989).  Further, "[t]he right to rescind a contract must be exercised with great promptness. . . . Accordingly, unreasonable delay in manifesting an election to rescind a contract may constitute a waiver of the right to rescind." *Meyers v. Hoops*, 140 N.E.2d 65, 68 (Ohio App. 1955); *see also Hanes v. Giambrone*, 14 Ohio App. 3d 400, 405, 471 N.E. 2d 801, 807 (1984).

There remains several questions of material fact that will need to be resolved in order to determine whether rescission is a viable defense to the enforcement of the settlement in this case.  These include, but are not limited to whether Parma is willing to return the benefit of the agreement in order to effectuate a rescission; what the value of that bargain actually was; whether the existence of the undisclosed locum tenens charges was material to the settlement agreement; whether the non-disclosure of the charges was known to Premier at the time the settlement was entered into; whether Premier intended to mislead Parma by concealing the existence of these charges; whether Parma was reasonably justified in assuming that no such charges remained un-billed; and, whether Parma timely sought rescission upon discovering the alleged fraud or mistake that led it to agree to the December settlement.  Therefore, Defendant's Motion for Partial Summary Judgment On the Enforceability and Meaning of Settlement Agreement is granted with regard to the meaning of the terms included in the December 2007 agreement, and denied with regard to the enforceability of the agreement.[10]  The issue of

---

[10] Assuming that rescission is not an available option, there would also remain a question of

enforceability will need to be resolved at trial.

C. <u>Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim</u>

Parma argues that the December settlement is not enforceable because the parties agreed that they did not intend to alter the contract or effectuate a change in the value of the contract. (ECF #72, pg. 10).   However, as set forth above, extrinsic evidence as to the parties' intent cannot be considered when the language of the agreement is clear and unambiguous.

Parma also argues that the December settlement cannot alter the terms of the original Agreement because the original Agreement contained specific requirements for any amendments to the Agreement.  The "Amendment and Agreement Execution" and "Entire Agreement" provisions, contained in 6.13 and 6.16 respectively, provide that the Agreement could not be amended except by an agreement

> in writing and executed in multiple copies on behalf of [Parma] by any official of [Parma] specifically authorized by [Parma's] Board with respect to such execution and on behalf of [Premier] by Richard L. Jackson, CEO or his designee.  Each multiple copy shall be deemed an original, but all multiple copies together shall constitute one and the same instrument.

(ECF #91, Ex. A, Section 6.13).

They also provided that "no changes in or additions to this Agreement shall be recognized unless incorporated herein by amendment as provided herein."  (ECF #91, Ex. A, Section 6.16).

Premier asserts that there is at least a factual question as to whether the modification requirements were met.   However, whether or not specifics of the amendment requirements were

---

fact as to what the proper final reconciliation would be employing the changes to section 4.5.2 contained in paragraph three of the December settlement.

-14-

met, the December settlement can be enforced. A settlement agreement resolving a contractual dispute is not bound by the terms of the contract that is in dispute. The settlement agreement is not an amendment of the original Agreement. Rather, it is a binding contract in its own right, and constitutes a written waiver of any contrary terms in the original Agreement. The parties who executed the settlement were the legal counsel of the parties, with actual authority to enter into the agreement,[11] and new consideration was provided as a basis for the agreement. Therefore, whether or not the writings containing the settlement agreement satisfied the technical requirements of sections 6.13 or 6.16 of the original Agreement, it is a binding and enforceable agreement.[12]

Finally, Parma argues that even if the December settlement does supercede the requirements of the original Agreement, Parma should be allowed to rescind the settlement based on fraudulent inducement or unilateral mistake. As set forth above, there are many unresolved questions of fact that could affect whether rescission is a viable remedy in this case. Therefore, the Court cannot determine as a matter of law that rescission is an available option or that the December settlement is otherwise unenforceable based on fraudulent inducement or unilateral mistake.

---

[11] There is a dispute as to whether counsel had the abstract authority to change the terms of the contract, but the parties do not dispute that counsel had the authority to agree to the proposal as it was submitted. Whether the parties fully understood the consequences of the agreement is not relevant here, so long as they gave counsel the authority to enter into the agreement as written.

[12] The enforceability of the agreement may be compromised by other defenses, but it is not unenforceable for failure to satisfy the requirements of the amendment provisions in the original Agreement.

## **CONCLUSION**

For the reasons set forth above, *Defendant's Motion For Summary Judgment On Plaintiff's Unjust Enrichment and Fraud Claims, and Supporting Memorandum of Points and Authorities* (ECF # 75) and *Defendant's Motion for Partial Summary Judgment On the Enforceability And Meaning of Settlement Agreement, and Supporting Memorandum of Points and Authority* (ECF #76) are GRANTED in part and DENIED in part. *Plaintiff Parma Community General Hospital's Motion for Summary Judgment on Defendant's Counterclaim*, (ECF # 72), is DENIED. Trial remains set for March 15, 2011 at 8:30 a.m. Trial will address Plaintiff's claim for breach of contract; Defendant's claim for breach of the December settlement agreement; and, Plaintiff's claim of fraudulent inducement (and/or defense of rescission) with regard to the December settlement. IT IS SO ORDERED.

    /s/ Donald C. Nugent  
DONALD C. NUGENT  
United States District Judge

DATED:    February 4, 2011